FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 2 4 2017

JAMES N. HATTEN, Clerk
BY: _____ Deputy Clerk

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ALI S. MUHAMMAD and
ASM HOLDINGS 64 LLC,

        Plaintiffs,

vs.

LAST CHANCE FUNDING, INC.;
MITCHELL LEVY; JOSEPH I. SUSSMAN,
and JOSEPH I. SUSSMAN, P.C.,

        Defendants.

_____/

CASE NO.:

## 1: 17-CV-0266

### JURY TRIAL DEMANDED

### COMPLAINT FOR USURY; GEORGIA RICO VIOLATIONS; FOR FRAUD; UNJUST ENRICHMENT; VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICE ACT; AND FOR INJUNCTIVE RELIEF

COMES NOW the Plaintiffs, Ali S. Muhammad and ASM Holdings 64 LLC, by and through their undersigned attorney, and sues Defendants, Last Chance Funding Inc., Mitchell Levy, Joseph I. Sussman and Joseph I. Sussman, P.C. and as grounds therefore would state as follows:

1. This is an action against defendants for usury and usurious scheme, for federal and state Racketeer Influenced Corrupt Organization Act (RICO) violations, for fraud, for unjust enrichment, for violations of the Georgia Fair Business Practice Act, and for Injunctive and other relief.

### PARTIES

2. Plaintiff Ali S. Muhammad is a natural person over the age of eighteen residing in and citizens of the state of Georgia and are otherwise sui juris.

1

3. Defendant Last Chance Funding, Inc. is a foreign corporation organized and existing in the state of New York and doing business in Fulton County, Georgia in this District. Last Chance Funding Inc. can be served by serving it's attorney at 333 Pearsall Avenue, Suite 205, Cedarhurst, New York 11516.

4. Defendant Mitchell Levy is a natural person residing in New York State and otherwise sui just who can be served at his office at 411 Hempstead Turnpike, West Hempstead, New York 11552 and is an active participant in Defendant Last Chance Funding Inc.'s fraudulent, usurious scheme.

5. Defendant Joseph I. Sussman is a natural person residing in the State of New York and is otherwise sui juris. Defendant Joseph I. Sussman, P.C. is a foreign Professional Corporation, a citizen of New York and a participant in and legal enabler of Defendant Last Chance Funding Inc.'s fraudulent, usurious scheme. Both of these defendants can be served at their office at 333 Pearsall Avenue, Suite 205, Cedarhurst, New York 11516.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this dispute under 28 U.S.C. Sec. 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.00.

7. This Court also has supplemental subject matter jurisdiction over the pendent state law claims pursuant to 28 U.S.C. Secs. 1391(b)(2)&(d).

8. Venue in this Court is proper pursuant to 28 U.S.C. Secs. 1391 (b) (2) & (d).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

9. Plaintiffs were in need of some capital investment in it's business in order to fund ongoing operations, purchase equipment and other assets and to meet the capital needs of running it's business.

10. Seeking a loan to finance it's continuing operations, Plaintiffs came into contact with several businesses who stated that they could help Plaintiffs with their need for financial capital. These businesses included Empower Group. This business in turn referred Plaintiff to Defendant Last Chance Funding LLC. These businesses, in concert with each other, suggested that Plaintiff could obtain its funding needs through an arrangement where Empower Group could arrange to provide Plaintiff with financing through funding and a loan through Defendant Last Chance Funding LLC. Plaintiff agreed to participate in an arrangement where Last Chance Funding LLC would provide the financing and Empower Group would in a two-way transaction involving Last Chance Funding and Plaintiff.

11. Plaintiff was unsure as to how the arrangement would work, but based upon obtaining needed funds, reluctantly agreed to the transaction. Unbeknownst to Plaintiff, Defendants, primarily Last Chance Funding LLC, which was providing the funding, and was also the party which would be receiving Plaintiff's loan "payments" was and is engaged in a fraudulent scheme to extract funds and monies from Plaintiff and from Plaintiff's business through a complicated and confusing set of transactions, which were not only fraudulent, but contradictory and usurious.

12. On or about June 16, 2016, Plaintiff signed a form titled ACH Authorization Form for Last Chance Funding. The June 16 agreement states that Defendant Last Chance Funding LLC is "leasing" equipment. Said Authorization is attached hereto as Plaintiff's Exhibit "A".

13. On or about August 16, 2016 defendant Last Chance Funding LLC had Plaintiff sign a document titled Addendum to Purchase Agreement. Attached hereto and made a part hereof is a copy of said Agreement as Plaintiff's Exhibit "B". While the June 16 form spoke of a "lease" the August 16 Addendum speaks of a "purchase", which is contradictory and confusing where the two exhibits are compared.

14. On or about September 29, 2016 defendant Last Chance Funding LLC had Plaintiff sign another document, again titled "Addendum to Purchase Agreement". Attached hereto and made a part hereof as Plaintiff's Exhibit "C" is a copy of said Addendum as Plaintiff's Exhibit "C". Like exhibit B, exhibit C speaks to a "Purchase", and not a lease, as referred to in Exhibit "A".

15. On or about October 18, 2016, Plaintiff's attorney sent a letter to Mitchell Levy, identified as the Director of Legal Affairs Enforcement for Last Chance Funding LLC, known as the LCF Group, which addressed the payments taken from Plaintiff's business account and the usurious interest being charged by defendant. Attached hereto and made a part hereof is a copy of said letter as Plaintiff's Exhibit "D". Additionally, defendant Last Chance Funding LLC had Plaintiff sign a "Confession of Judgment", although Plaintiff was not in default of any payments, as a pre-condition for obtaining funding. On or about November 21, 2016, Plaintiff's attorney sent a letter to defendant Mitchell Levy, objecting to the Affidavit of Confession of Judgment and requesting that it be withdrawn. Said letter is attached hereto and made a part hereof as Plaintiff's Exhibit "E'.

16. In furtherance of it's usurious scheme to extract ill-gotten monies from Plaintiff's business account, defendant Last Chance used the Automatic Clearing House ("ACH") Network in furtherance of it's fraudulent, usurious scheme so that

4

it could exact payments of money from Plaintiff's bank account. In furtherance of it's fraudulent, usurious scheme defendant Last Chance extracted Plaintiff's Bank's name, its business account number, the bank routing number, and other sensitive banking information which allowed defendant to access Plaintiff's business banking account at will.

17. From June 21, 2016 to October 12, 2016 defendant Last Chance deducted a total of $68,429.10, which deductions were exorbitant, excessive, illegal and usurious, alleging for an "equipment lease" for equipment only worth a small fraction of the amount taken by defendant in alleged lease payments.

18. On December 6, 2016 Plaintiff's counsel sent a letter to defendant Last Chance's attorney, Joseph I. Sussman of Joseph I. Sussman, P.C., objecting to said defendant's counsel contacting Plaintiff directly, although said attorney was well aware of Plaintiff's counsel's representation of Plaintiff, to unethically circumvent Plaintiff's counsel's representation of Plaintiff. Attached hereto and made a part hereof is a copy of said letter as Plaintiff's Exhibit "F".

19. Notwithstanding Plaintiff's counsel's letter, Plaintiff learned that defendant Last Chance's attorney Sussman, had wrongfully obtained, through the fraudulent "Confession of Judgment" a Judgment against Plaintiff for an additional $26,139.42, for a total extracted from Plaintiff of $94,568.52 for an alleged "equipment lease" for equipment worth only a small fraction of the monies extracted from Plaintiff's account. Attached hereto and made a part hereof is a copy of a letter from defendant Last Chance's attorney, Joseph I. Sussman, dated January 4, 2017 advising Plaintiff directly of the Judgment and attaching the Judgment as Exhibit "G", again unethically circumventing Plaintiff's attorney.

20. Defendants Joseph I. Sussman and Joseph I. Sussman, P.C. are both

participants and enablers of defendant Last Chance's fraudulent, usurious scheme to unlawfully extract exorbitant amounts of money from their customer's accounts.

## CLAIMS FOR RELIEF

### Count 1: Georgia RICO Act Violations

21. Plaintiff re-alleges the allegations set forth in paragraphs 9 through 20 into this count.

22. The activities of Defendants Last Chance Funding LLC, Levy and Sussman constitute a violation of the Georgia RICO Act, O.C.G.A. Sec. 16-14-1, et seq.

23. Defendants Last Chance and Joseph I. Sussman, P.C. are legal entities which constitute an enterprise and/or enterprises pursuant to the provisions of the Georgia RICO Act.

24. Defendants committed multiple predicate acts of "racketeering activity" as defined by the Georgia RICO Act, including but not limited to:

Wire Fraud

Mail Fraud

Bank Fraud

Theft by deception

Fraud and misrepresentation

Violation of other state and federal laws and regulations

25. Defendant's racketeering activities are ongoing and constitute a pattern of racketeering activity.

26. Defendants have through a pattern of racketeering activity, acquired or maintained, directly or indirectly, an interest in or control of an enterprise, property, including personal property, through the activities alleged

herein. Defendants have conspired with each other to commit the wrongful acts alleged herein and has committed overt acts in furtherance of this conspiracy and have received a benefit from them.

27. Defendants predicate acts were aimed and directed at Plaintiffs.

28. Defendants violations of the Georgia RICO Act have directly or indirectly damaged and continue to damage Plaintiffs and Plaintiffs are entitled to recover from Defendants treble damages and other relief authorized by the Georgia RICO Act.

## COUNT II—Fraud

29. Plaintiffs re-allege the allegations contained in paragraphs 9 through 20 into this count and incorporate same by reference into this count.

30. Defendants made multiple false representations of material facts to Plaintiffs. Specifically Defendants stated that:

That Plaintiffs were leasing equipment.

That Plaintiffs were purchasing equipment.

That Defendants were lending Plaintiffs funds.

That Defendants would not wrongfully debit Plaintiff's bank account through the ACH Network.

That Defendants would not wrongfully use Plaintiff's Affidavit of Confession of Judgment to obtain a Judgment against Plaintiffs.

That Defendants business practices were legitimate.

31. Throughout the period during which Defendants made the above representations, each of which was material and were uniformly made to Plaintiffs. Defendants knew that the representations were false, were known to be false when Defendants made them and concealed the material facts multiple times, and were

made with the intent to deceive.

32. The knowledge of the falsity of these statements was exclusive to Defendants throughout the period in which they were made.

33. Defendants ensured that the false representations would not be discovered by making and continuing to make multiple contradictory statements.

34. Plaintiffs justifiably relied on Defendants false, fraudulent misrepresentations.

35. As a result of Defendants fraud and Plaintiffs reliance, Plaintiffs have been damaged financially.

## Count III—Unjust Enrichment

36. Plaintiffs re-allege the allegations contained in paragraphs 9 through 20 and incorporate same by reference into this count.

37. As a result of the fraudulent acts described in this Complaint, Defendants were unjustly enriched at Plaintiffs expense.

38. Defendants extracted substantial revenue and made substantial profit from accessing Plaintiffs bank account.

39. Defendants were aware of the substantial benefit being bestowed as a result of their illegal and fraudulent conduct but did nothing to stop or halt said conduct or to return the money received.

40. Defendants have made no payment or return of the profit it wrongfully received by virtue of its fraudulent conduct.

## Count IV—Usury/Usurious Scheme

41. Plaintiffs re-allege the allegations of paragraphs 9-21 and incorporates same by reference into this count.

42. This is an action for violations of the Georgia usury statutes, O.C.G.A.

Sec. 7-4-18.

43. Plaintiffs received a number of confusing and contradictory contracts,f forms and agreements which resulted in Defendants receiving access to Plaintiffs business bank account.

44. Defendants used a fraudulent scheme using the ACH Network to make and collect numerous unauthorized payments from Plaintiffs business bank account.

45. Defendants collected and received payments far in excess of the legal interest rate in Georgia of 5% per month or 16.99% annually.

46. Additionally Defendants charged and debited Plaintiffs account for miscellaneous charges resulting in excessive charges above the legal limits.

47. By using a fraudulent scheme including ACH Network debits, Defendants were able to perpetuate this fraudulent usurious scheme for many months from June, 2016 through October 2016.

48. As a result of Defendants usurious interest rates, Plaintiffs have been injured.

49. Plaintiffs seek disgorgement of all illegal usurious interest charges made received and collected by Defendants and restitution.

### Count V—Violation of the Georgia Fair Business Practice Act

50. Plaintiffs re-allege the allegations of paragraphs 9 through 20 and incorporate same by reference into this Count.

51. Defendants are liable to Plaintiffs pursuant to the Georgia Fair Business Practices Act, O.C.G.A. Sec. 10-1-390 et seq.

52. Defendants made numerous false statements of material fact and misrepresented the amounts and frequency of charges made to Plaintiffs business

bank account through the ACH Network.

53. Defendants knowingly made numerous misrepresentations of material facts, knowing that they had misrepresented the facts regarding the amounts and frequencies of the charges debited from Plaintiffs business bank accounts.

54. Plaintiffs suffered substantial losses and harms described herein.

56. As a direct and proximate result of Defendants conduct, Plaintiffs are entitled to recover actual damages, equitable and injunctive relief, treble damages, attorney's fees and litigation expenses and punitive damages pursuant to O.C.G.A. 10-1-390.

## **VERIFIED MOTION FOR TEMPORARY INJUNCTIVE RELIEF**

55.Plaintiffs Ali S. Muhammad and ASM Holdings 64 LLC pursuant to Federal Rule of Civil Procedure 65 move to enjoin and restrain Defendant Last Chance Funding, LLC from continuing its fraudulent usurious scheme in the State of Georgia and from accessing Plaintiff's bank accounts or taking any punitive or retaliatory action or actions against Plaintiffs and Plaintiffs business.

56.It is within this Court's wide discretion to grant a request for a temporary restraining order and/or a preliminary injunction. See *Grand River Ent. Six Nations Ltd. v. Pryor*, 481 F. 3d 60 (2d Cir.2007). Generally, in order to warrant a court's intervention in the form of injunctive relief, "[t]he party seeking the injunction must demonstrate (1) irreparable harm should the injunction not be granted, and either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief>" *Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d* Cir.1979); *Citibank v. Cititrust, 756 F. 2d* 273(2d Cir. 1985); *Virgin Enterprises*

*Ltd. V. Nawab*, 335 F. 3d 141 (2d Cir. 2003).

57. Plaintiff will suffer irreparable injury unless the Court grants Plaintiffs motion for temporary restraining order.

58. Plaintiff has a likelihood of success on the merits of his Complaint in that he has pled substantial causes of action with substantial exhibits and proof. Alternatively Plaintiff has raised serious issues which justify the granting of this Temporary Restraining Order/Preliminary Injunction. Plaintiff presents sufficiently Serious questions going to the merits of their claim which outweigh and tip the Balance of hardships in favor of Plaintiff.

59. In granting of Plaintiff's Temporary Restraining Order is in the public interest to prevent Defendants and others from continuing to violate the law and victimize their own customers. Plaintiff is entitled to an emergency ex parte temporary restraining order based upon both the law of Georgia and the United States,

60. Georgia law provides that equity, by writ of injunction, may restrain any Act of a private individual or corporation which is illegal or contrary to equity and good conscience and for which no adequate remedy is provided at law.

61. Georgia law provides that writs of injunction may be issued by courts to enjoin illegal acts and practices.

62. Under the circumstances of this case, no bond should be required as a prerequisite to granting Plaintiffs Temporary Restraining Order.

63. Certification is set forth in the verification of this motion by Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A. That the court take jurisdiction over the parties and the subject matter of this cause.
B. That the court enter an Order enjoining Defendants from continuing the unlawful, deceptive, fraudulent and unfair business practices alleged in this Complaint.
C. Grant actual, statutory, treble damages or punitive damages, costs of this action and a reasonable attorney's fee to Plaintiffs and against Defendants.
D. Enter an Order requiring Defendants to pay both pre-judgment and post-judgment interest on any amounts awarded.
E. Grant such other and further relief as the Court deems equitable, appropriate and just.

Respectfully submitted this 20th day of January, 2017.

C. Samuel Rael, Attorney for Plaintiff
Georgia Bar Number

2221 Peachtree Rd. NE
Suite D-114
Atlanta, GA 30309

### VERIFICATION

Plaintiff, Ali S, Muhammad, on behalf of himself and ASM Holdings 64 LLC, hereby affirms that the facts and allegations contained herein are true and correct.

Affirmed this 20th day of January, 2017.

Ali S. Muhammad, Affiant



Schedule A

ACH Authorization Form for Last Chance Funding Inc.

Payment Authorization I authorize my bank to debit my account as identified above to the terms stated here. This authorization shall remain in effect until the Service Provider and bank receive written notification from me of intent to terminate at such time and in such manner as to afford the Service Provider and bank reasonable opportunity to act (Minimum 30 days). I understand that if the total amount owed to the Service Provider is increased, I authorize this plan to continue as long as the payment amount remains unchanged until the amount owed the Service Provider is paid off, or unless the plan is terminated earlier by me as above. I understand any added amounts can be applied for with a new ACH Debit Payment Authorization Form.  All other changes such as payment amount, frequency, bank account number change, will require a new ACH Debit Payment Authorization Form to be filled out and submitted to Merchant 15 days prior to any change being implemented. I understand that this payment plan may be cancelled by the Service Provider or Merchant due to NSF (Non-sufficient Funds). I represent and warrant that I am authorized to execute this payment authorization for the purpose of implementing this payment plan. I indemnify and hold the Service Provider, the bank, and Merchant harmless from damage, loss or claim resulting from all authorized actions hereunder.

Payments will be scheduled daily in the amounts of $ __384.15__, Recurring schedule of payment will start _____ and last payment ending on _____, Payments will be deducted every day excluding weekends until full payback amount (__22,350____) is reached.

Merchant Name: __Ali Muhammad__

Address: __1851 Penelope Rd Nw, Atlanta, GA, 30314__

Bank Name: __First Citizens Bank__

City: __Raleigh__ State: __NC__ Zip: __27611__

Routing Number: __061191848__

Account Number: __009062698628__

Account Name: __A.S.M. Holdings 64 LLC__

Signature(s):

By: __Ali S Muhammad__

Name/Title: __Ali Muhammad/Owner__

Dated: __June 16, 2016__

411 Hempstead Turnpike •West Hempstead, NY 11552 •Phone (888)499-2939 •Fax (888)499-0539
www.thelcfgroup.com

Initials __ASM__

INITIAL HERE



## Authorization Agreement For Electronic Check Payments

This authorization agreement is entered into pursuant to the Merchant Agreement ("Agreement") dated ___June 16, 2016___ between the undersigned Merchant and Last Chance Funding Inc. herein ("LCF"). Terms used and not defined herein will have the meanings assigned to such terms in the Purchase Agreement.

The undersigned Merchant hereby authorized LCF to initiate recurring (debit or credit) entries to demand deposit account at the bank named below. Merchant acknowledges that the origination of ACH or Electronic Check transactions to its account must comply with the provisions of applicable law. Furthermore if any such ACH or Electronic Check transactions should be returned for insufficient funds (NSF), Merchant authorized LCF to reattempt to collect such amounts by electronic debit and, in any such case, collect a fee of $25.00 per returned item by electronic debit from Merchants account identified below.

LCF will debit __15_% of each future account and contract right arising from, or relating to payment of gross amounts of monies by customers of the Seller, insurance payers or other third payers (the "Future Receivables") until the purchaser has received the amount specified in the Agreement. The Authorized Party is specifically authorized to provide LCF (1) any and all information and date relating to Merchant's account and transactions processed by any of its merchant credit card processors, including, but not limited to, all information relating to such accounts and transactions that any of its merchant credit card processors make available to Merchant; (2) access to all transactions and all such other information that would be available to Merchant as may be requested by LCF; (3) all information relating to Merchant and its operations, including, but not limited to, its ownership, control, change and reduction or expansion of its business or credit card processing activities; and (4) Merchant agrees that it will not change the account name, password or other access information for its accounts with
_First Citizens Bank_____(bank) and Authorized Party without giving LCF at least ten business days prior written notice of such change.

This authorization shall remain in effect until the sooner of (a) such time that LCF has received a total of $_22,350_____ under the Agreement, or (b) LCF has delivered to the authorized Party written revocation of this authorization. The individual signing this authorization on behalf of Merchant certifies to LCF that he or she is a duly authorized check signer on the financial institution account identified below, that he or she is authorized to enter into this authorization on behalf of the Merchant, and that the

Initials_____

**Empower Group** - 37-18 Northern Blvd Suite 409, Long Island City, NY 11101

Fee Structure Form - ID Number: 2519105a

"I hereby authorize Empower Group Inc, to initiate a debit entry to my Checking account at the depository financial institution named below in the amounts listed below, hereafter called Depository, and to debit the same to such account. I acknowledge that the origination of ACH transactions to my account must comply with the provisions of the U.S. law."

Business Assessment Fee:     $395

File Processing Fee:     $265

Broker Origination Fee:     $~~139~~ $69.00 PER SCOTT *a.S.m*

Bank Name: FIRST CITIZENS BANK

City: ATLANTA    State: GA.    Zip: 30310

Routing Number: 061191848    Account Number: 009062698628

Company: ASM HOLDINGS 64,LLC

Address: 1851 PENELOPE RD.N.W.AT.GA.30314

Phone: 404-226-5010

Print Name(s): ALI S.MUHAMMAD    Title: MANAGING MEMBER

Signature: *Ali S Muhammad*    Date: JUNE 16,2016

<table>
<tr><td>YOUR BUSINESS NAME<br>YOUR BUSINESS ADDRESS<br>CITY, ST ZIP</td><td></td><td></td><td>0000</td></tr>
</table>

| This Software Licensed To: | Date | Check No. | Amount |
| Empower Group | 6/16/15 | 0000 | $*****0.00 |

Pay To The Order Of EMPOWER GROUP PARTNERS

**Pay Exactly** SEVEN HUNDRED FIFTY*****************

YOUR BANKS INFO    Payable in U.S. Funds

**SIGNATURE NOT REQUIRED**
Your depositor has authorized this payment to payee.
Payee to hold you harmless for payment of this document
This document shall be deposited only to credit of payee
Absence of endorsement is guaranteed by payee

Memo EMPOWER GROUP ADMIN FEE
Customer authorization obtained   6/16/15
Using: Quick Pay Office Pro 7.06

⑈0000⑈ ⑆000000000⑆ 000000000000⑈

THIS IS HOW THE DRAFT WILL APPEAR ON YOUR BANK STATEMENTS

\*\* IF ACH IS RETURNED OR NOT HONORED IN ANYWAY BY YOUR BANK THERE WILL BE A $35.00 FOR EVERY RETURNED ACH.



### Last Chance Funding Inc. - SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: **ASM Holdings 64, LLC** D/B/A: **ASM Holdings 64, LLC**

Physical Address: **1851 Penelope Rd Nw** City **Atlanta** State **GA** Zip **30314**

Federal TAX ID# **27-4625767**

#### SECURITY AGREEMENT

**Security Interest.** To secure Merchant's payment and performance obligations to Last Chance Funding Inc. (herein after referred to as COMPANY) under the Merchant Agreement (the "Factoring Agreement"), Merchant hereby grants to COMPANY a security interest in (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant; and (b) all proceeds, as that term is defined in Article 9 of the UCC (a and b collectively, the "Collateral").

**Cross-Collateral.** To secure Guarantor's payment and performance obligations to COMPANY under this Security Agreement and Guaranty (the "Agreement"), Guarantor hereby grants COMPANY a security interest in

_____

(the "Additional Collateral"). Guarantor understands that COMPANY will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Merchant and Guarantor each acknowledge and agree that any security interest granted to COMPANY under any other agreement between Merchant or Guarantor and COMPANY (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement.

Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as COMPANY deems necessary to perfect or maintain COMPANY'S first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes COMPANY to file any financing statements deemed necessary by COMPANY to perfect or maintain COMPANY's security interest, which financing statement may contain notification that Merchant and Guarantor have granted a negative pledge to COMPANY with respect to the Collateral, the Additional Collateral and the Cross-Collateral, and that any subsequent lien or may be tortuously interfering with COMPANY's rights. Merchant and Guarantor shall be liable for and COMPANY may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by COMPANY in protecting, preserving and enforcing COMPANY's security interest and rights.

**Negative Pledge.** Merchant and Guarantor each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** COMPANY shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, COMPANY may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that COMPANY may enter into an agreement with Merchant's landlord giving COMPANY the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified Merchant capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, COMPANY may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise.

#### GUARANTEE

**Personal Guaranty of Performance.** The undersigned Guarantor(s) hereby guarantees to COMPANY, Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement, and (ii) at the time Merchant admits its inability to pay its debts, or makes a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against Merchant seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts.

**Guarantor Waivers.** In the event that Merchant fails to make a payment or perform any obligation when due under the Merchant Agreement, COMPANY may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross- Collateral COMPANY may hold pursuant to this Agreement or any other guaranty.

COMPANY does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay any amount owed under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) COMPANY's acceptance of this Agreement ; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to COMPANY. In addition, COMPANY may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to COMPANY; (ii) release Merchant from its obligations to COMPANY; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement, Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to COMPANY under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i)

Initials _____

Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the Company electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to Company; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of Company, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to Company; or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to Company at law, in equity or otherwise pursuant to this Agreement. Protection 1. The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately Protection 2. Company may enforce the provisions of the Personal Guarantee of Performance against the Guarantor. Protection 3. Merchant shall upon execution of this Agreement, deliver to Company an executed confession of judgment in favor of Company in the amount of the Purchase Amount stated in the Agreement. Upon breach of any provision in this paragraph 1.11, Company may enter that confession of judgment as a judgment with any petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing Protections 2 and 3 are immediately invoked.

2.10 Working Capital Funding. Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than Company.

2.11 Unencumbered Receipts. Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of Company

2.12 Business Purpose. Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchants entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.13 Default Under Other Contracts. Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity

**III. EVENTS OF DEFAULT AND REMEDIES 3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) Merchant shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Merchant seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) the sending of notice of termination by Guarantor; (e) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (f) Merchant shall transfer or sell all or substantially all of its assets; (h) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (i) Merchant shall use multiple depository accounts without the prior written consent of Company; (j) Merchant shall change its depositing account without the prior written consent of Company; (k) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; or (l) Merchant shall default under any of the terms, covenants and conditions of any other agreement with Company.

3.2 Remedies. In case any Event of Default occurs and is not waived pursuant to Section 4.4.1 hereof, Company may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy. All rights, powers and remedies of Company in connection with this Agreement may be exercised at any time by Company after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity

3.3 Costs. Merchant shall pay to Company all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of Company's remedies set forth in Section 4.2 above, including but not limited to court costs and attorneys' fees.

3.4 Required Modifications. Merchant is required to give Company written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give Company seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

**IV. MISCELLANEOUS 4.1 Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by Company.

4.2 Assignment. Company may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

4.3 Notices. All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

4.4 Waiver Remedies. No failure on the part of Company to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5 Binding Effect; Governing Law, Venue and Jurisdiction. This Agreement shall be binding upon and inure to the benefit of Merchant, Company and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Company which consent may be withheld in Company sole discretion. Company reserves the rights to assign this Agreement with or without prior written notice to Merchant. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Company so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by Company to transfer such proceeding to an Acceptable Forum.

4.6 Survival of Representation, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.7 Severability. In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.8 Entire Agreement. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement hereto embody the entire agreement between Merchant and Company and supersede all prior agreements and understandings relating to the subject matter hereof.

4.9 JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BYJURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.10 CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANYRIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.11 Facsimile Acceptance. Facsimile signatures shall be deemed acceptable for all purposes

Initials 

subrogation ; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that COMPANY must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

**MERCHANT #1**

By _Ali Muhammad /Owner_    _[signature]_

    (Print Name and Title)          (Signature)

SS# _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_ _____ Drivers License Number _____

**MERCHANT #2**

By _____    _____

    (Print Name and Title)          (Signature)

SS#_____ Drivers License Number _____

**OWNER/GUARANTOR #1**

By _Ali Muhammad /Owner_    _[signature]_

    (Print Name and Title)          (Signature)

**OWNER/GUARANTOR #2**

By _____    _____

    (Print Name and Title)          (Signature)

Initials _[initials]_

INITIAL HERE



## ADDENDUM TO PURCHASE AGREEMENT

This Addendum shall apply to the Purchase Agreement (the "Agreement") dated
<u>August 16, 2016</u> by and between Last Chance Funding Inc DBA The LCF Group
("Buyer") and <u>A.S.M. Holdings 64, LLC</u> ("Seller") wherein and
whereby for the sum of <u>18,000</u> Seller agreed to sell and Buyer agreed to buy the
future credit card receivables of the seller in the sum of <u>26,820</u>.

By signing below, seller is authorizing the deduction of <u>8,136.45</u> from the
purchase price to satisfy the remaining balance from the previous merchant cash
advance agreement between seller and buyer. The previous agreement will now be
terminated as paid in full.

This Addendum shall not modify or replace any of the terms and conditions in the
Agreement. All terms and conditions therein shall be enforceable against each of the
locations listed above whether operated by the same or a different entity than the
Seller. Seller agrees that the Buyer may enter a UCC financing statement against any
and all assets maintained by the Seller.

Executed and agreed on this <u>16th</u> day of <u>August</u>, <u>2016</u>

| Seller | Guarantor | The LCF Group |
|---|---|---|

x *Ali S Muhammad* ✖   x *Ali S Muhammad* ✖   x _____ ✔

Print Name: ALI S. MUHAMMAD                 Print Name:
Title: OWNER                                 Title:

EXHIBIT"B"



Schedule A

ACH Authorization Form for Last Chance Funding Inc.

Payment Authorization I authorize my bank to debit my account as identified above to the terms stated here. This authorization shall remain in effect until the Service Provider and bank receive written notification from me of intent to terminate at such time and in such manner as to afford the Service Provider and bank reasonable opportunity to act (Minimum 30 days). I understand that if the total amount owed to the Service Provider is increased, I authorize this plan to continue as long as the payment amount remains unchanged until the amount owed the Service Provider is paid off, or unless the plan is terminated earlier by me as above. I understand any added amounts can be applied for with a new ACH Debit Payment Authorization Form. All other changes such as payment amount, frequency, bank account number change, will require a new ACH Debit Payment Authorization Form to be filled out and submitted to Merchant 15 days prior to any change being implemented. I understand that this payment plan may be cancelled by the Service Provider or Merchant due to NSF (Non-sufficient Funds). I represent and warrant that I am authorized to execute this payment authorization for the purpose of implementing this payment plan. I indemnify and hold the Service Provider, the bank, and Merchant harmless from damage, loss or claim resulting from all authorized actions hereunder.

Payments will be scheduled daily in the amounts of $ 462.42 . Recurring schedule of payment will start _____ and last payment ending on _____. Payments will be deducted every day excluding weekends until full payback amount ( 26,820 ) is reached.

Merchant Name: A.S.M. Holdings 64 LLC

Address: 1851 Penelope Rd Nw, Atlanta, GA, 30314

Bank Name: First Citizens Bank

City: Raleigh   State: NC   Zip: 27611

Routing Number: 061191848

Account Number: 009062698628

Account Name: A.S.M. Holdings 64 LLC

Signature(s):

By: _Ali SMuhammad_

Name/Title: Ali Muhammad/Owner

Dated: August 16, 2016

Initials _ASM_

INITIAL HERE

**Empower Group** - 37-18 Northern Blvd Suite 409, Long Island City, NY 11101

Fee Structure Form - ID Number: 2519105a

"I hereby authorize Empower Group Inc, to initiate a debit entry to my Checking account at the depository financial institution named below in the amounts listed below, hereafter called Depository, and to debit the same to such account. I acknowledge that the origination of ACH transactions to my account must comply with the provisions of the U.S. law."

Business Assessment Fee:     $309

File Processing Fee:     $199

Broker Origination Fee:     $92

Bank Name: _____

City: _____ State: _____ Zip: _____

Routing Number: _____ Account Number: _____

Company: _____

Address: _____

Phone: _____

Print Name(s): _____ Title: _____

Signature: _____ Date: _____

YOUR BUSINESS NAME
YOUR BUSINESS ADDRESS
CITY, ST ZIP

**0000**

| This Software Licensed To | | Date | Check No. | Amount |
|---|---|---|---|---|
| Empower Group | | 6/16/15 | 0000 | $*****0.00 |

Pay To The
Order Of   EMPOWER GROUP PARTNERS

*Pay Exactly*

YOUR BANKS INFO                     Payable in U.S. Funds

**SIGNATURE NOT REQUIRED**
Your depositor has authorized this payment to payee.
Memo  EMPOWER GROUP ADMIN FEE          Payee to hold you harmless for payment of this document.
                                       This document shall be deposited only to credit of payee.
Customer authorization obtained  6/16/15   Absence of endorsement is guaranteed by payee
Using: Quick Pay Office Pro 7.06

⑈0000⑈ ⑆000000000⑆ 00000000000⑈

THIS IS HOW THE DRAFT WILL APPEAR ON YOUR BANK STATEMENTS

** IF ACH IS RETURNED OR NOT HONORED IN ANYWAY BY YOUR BANK THERE WILL BE A $35.00 FOR EVERY RETURNED ACH.



Merchant will be bound by all of the terms of this authorization. Merchant further agrees that a breach of this authorization will constitute a "Breach" of the agreement.

Merchant will be bound by all of the terms of this authorization. Merchant further agrees that a breach of this authorization will constitute a "Breach" of the agreement.

Routing Number **061191848**

Account Number **009062698628**

Account Name **A.S.M. Holdings 64 LLC**

Bank Name **First Citizens Bank**

Type of Account: __**X**__ Checking ____Savings

Merchants Legal Name: **A.S.M. Holdings 64 LLC**

Merchants Identification Number of Merchant Credit Card Processor:

Signature: X _~Ali S Muhammad~_

Printed Name: **Ali Muhammad/Owner**

View-Only Access to Online Bank

Login: _____

Password: _____

Date: **August 16, 2016**



## APPENDIX A: THE FEE STRUCTURE:

A. Origination Fee-$ **Waived** of the funded amount, to cover Underwriting and related expenses.

B. ACH Program fee- $ **395** or (__% of the funded amount, depending on size of advance.) ACH's are labor intensive and are not an automated process, requiring us to charge this fee to cover costs

C. Disbursement Amount-$ **17,605**

D. NSF Fee (Standard) - $35.00 (each) up to FOUR TIMES ONLY before a default is declared.

E. Rejected ACH $100—when Merchant directs the bank to reject our Debit ACH.

F. Bank Change Fee- $50.00--- When Merchant requires a change of Bank Account to be debited, requiring us to adjust our system.

G. Blocked Account- $2,500.00 – When Merchant BLOCKS Account from our Debit ACH which places them in default (per contract).

H. Default Fee- $2,500.00 ---- when Merchant changes Bank Account cutting us off from our collections.

I. Miscellaneous Service Fees- Merchant shall pay certain fees for services related to the origination and maintenance of Accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be charged $30.00 for a Fed Wire or $0.00 for a bank ACH. The Current charge for the underwriting and origination of each Merchant Agreement is $ *WAIVED* paid from the funded amount. Merchant will be charged $25.00 for every additional change of their operating bank account once they are active with Last Chance Funding Inc. Additional copies of prior monthly statement will incur a fee of $10.00 each.

Merchant 1 (sign) ✗ *Ali S Muhammad*  Print: Ali Muhammad /Owner

Merchant 2 (sign) _____  Print:_____

Initials_____ 



## Last Chance Funding Inc. - SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: **A.S.M. Holdings 64, LLC** D/B/A: **A.S.M. Holdings 64, LLC**

Physical Address: **1851 Penelope Rd Nw** City **Atlanta** State **GA** Zip **30314**

Federal TAX ID# **27-4625767**

### SECURITY AGREEMENT

**Security Interest.** To secure Merchant's payment and performance obligations to Last Chance Funding Inc. (herein after referred to as COMPANY) under the Merchant Agreement (the "Factoring Agreement"), Merchant hereby grants to COMPANY a security interest in (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant; and (b) all proceeds, as that term is defined in Article 9 of the UCC (a and b collectively, the "Collateral").

**Cross-Collateral.** To secure Guarantor's payment and performance obligations to COMPANY under this Security Agreement and Guaranty (the "Agreement"), Guarantor hereby grants COMPANY a security interest in

_____

(the "Additional Collateral). Guarantor understands that COMPANY will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Merchant and Guarantor each acknowledge and agree that any security interest granted to COMPANY under any other agreement between Merchant or Guarantor and COMPANY (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement.

Merchant and Guarantor each agree to execute any documents or take any action in connection with this Agreement as COMPANY deems necessary to perfect or maintain COMPANY'S first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes COMPANY to file any financing statements deemed necessary by COMPANY to perfect or maintain COMPANY's security interest, which financing statement may contain notification that Merchant and Guarantor have granted a negative pledge to COMPANY with respect to the Collateral, the Additional Collateral and the Cross-Collateral, and that any subsequent lien or may be tortuously interfering with COMPANY's rights. Merchant and Guarantor shall be liable for and COMPANY may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by COMPANY in protecting, preserving and enforcing COMPANY's security interest and rights.

**Negative Pledge.** Merchant and Guarantor each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral , the Additional Collateral or the Cross-Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** COMPANY shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, COMPANY may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that COMPANY may enter into an agreement with Merchant's landlord giving COMPANY the right; (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified Merchant capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, COMPANY may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise.

### GUARANTEE

**Personal Guaranty of Performance.** The undersigned Guarantor(s) hereby guarantees to COMPANY, Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement, and (ii) at the time Merchant admits its inability to pay its debts, or makes a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against Merchant seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts.

**Guarantor Waivers.** In the event that Merchant fails to make a payment or perform any obligation when due under the Merchant Agreement, COMPANY may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross- Collateral COMPANY may hold pursuant to this Agreement or any other guaranty.

COMPANY does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) COMPANY's acceptance of this Agreement ; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to COMPANY. In addition, COMPANY may raise any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to COMPANY; (ii) release Merchant from its obligations to COMPANY; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to COMPANY under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i)

Initials

# **Affidavit of Confession of Judgment**

Deponent: __Ali Muhammad__, residing at __1851 Penelope Rd Nw, Atla__ being duly sworn depose(s) and says:

That the deponent is the officer of __A.S.M. Holdings 64__, a __Limited Liability Compa__, located at __1851 Penelope Rd Nw, Atlanta, GA, 30314__ and is duly authorized to make this affidavit on behalf of this corporate defendant, as well as in the individual capacity as a codefendant in the action herein.

This confession of judgment is for the debt due or to become due to plaintiff by the defendant(s) herein, pursuant to, Merchant Agreement and Security Agreement (the Agreements) dated __August 16, 2016__ between defendants and Last Chance Funding Inc., a New York Corporation.

Defendants hereby authorize plaintiff to enter judgment jointly and severally against all defendants in any court of appropriate jurisdiction located within, and pursuant to the laws of the State of New York, in the amount of __31,820__ ($2500 default and $2500 bank penalties or credit card processor change or fees included), less payments timely made pursuant to the Agreements . Plus costs and disbursements of this action, pre and post judgment interest of 16% per annum, or the greatest interest allowed by law from the date of the execution hereof.

A faxed copy or other electronic copy of the within AFFIDAVIT OF CONFESSION OF JUDGEMENT shell be deemed for all intents and purposes as the original.

Deponent s Signature, _____ ↙ SIGN

STATE OF :_____) COUNTY OF :_____) Ss:.

On this ___day of_____, of 20___, before me personally came to me _____ personally known to me, who being by me duly sworn did depose and say that he/she/they are (is) the of the corporate defendant described in and which executed this instrument and acknowledged that he/she/they had the authority to execute this instrument by authority of the board of directors of said corporation; as well as in their personal capacity as a natural person(s) codefendant(s) in the action herein.

## Notary Public _____



## ADDENDUM TO PURCHASE AGREEMENT

This Addendum shall apply to the Purchase Agreement (the "Agreement") dated September 29, 2016 by and between Last Chance Funding Inc DBA The LCF Group ("Buyer") and A.S.M. Holdings 64, LLC ("Seller") wherein and whereby for the sum of 18,000 Seller agreed to sell and Buyer agreed to buy the future credit card receivables of the seller in the sum of 26,820 .

By signing below, seller is authorizing the deduction of 13,032.87 from the purchase price to satisfy the remaining balance from the previous merchant cash advance agreement between seller and buyer. The previous agreement will now be terminated as paid in full.

This Addendum shall not modify or replace any of the terms and conditions in the Agreement. All terms and conditions therein shall be enforceable against each of the locations listed above whether operated by the same or a different entity than the Seller. Seller agrees that the Buyer may enter a UCC financing statement against any and all assets maintained by the Seller.

Executed and agreed on this 29th day of September , 2016

**Seller**                **Guarantor**                **The LCF Group**

X ~~Ali S Muhammad~~ ✗   X ~~Alvi S Muhammad~~ ✗   X _____
Print Name: ALI  S. MUHAMMAD                          **Print Name:**
**Title:** OWNER                                       **Title:**

EXHIBIT "C"



### Schedule A

### ACH Authorization Form for Last Chance Funding Inc.

Payment Authorization I authorize my bank to debit my account as identified above to the terms stated here. This authorization shall remain in effect until the Service Provider and bank receive written notification from me of intent to terminate at such time and in such manner as to afford the Service Provider and bank reasonable opportunity to act (Minimum 30 days). I understand that if the total amount owed to the Service Provider is increased, I authorize this plan to continue as long as the payment amount remains unchanged until the amount owed the Service Provider is paid off, or unless the plan is terminated earlier by me as above. I understand any added amounts can be applied for with a new ACH Debit Payment Authorization Form.  All other changes such as payment amount, frequency, bank account number change, will require a new ACH Debit Payment Authorization Form to be filled out and submitted to Merchant 15 days prior to any change being implemented. I understand that this payment plan may be cancelled by the Service Provider or Merchant due to NSF (Non-sufficient Funds). I represent and warrant that I am authorized to execute this payment authorization for the purpose of implementing this payment plan. I indemnify and hold the Service Provider, the bank, and Merchant harmless from damage, loss or claim resulting from all authorized actions hereunder.

Payments will be scheduled daily in the amounts of $ __462.42__ Recurring schedule of payment will start _____ and last payment ending on _____. Payments will be deducted every day excluding weekends until full payback amount (__26,820____) is reached.

Merchant Name: __A.S.M. Holdings 64 LLC__

Address: __1851 Penelope Rd Nw, Atlanta, GA, 30314__

Bank Name: __First Citizens Bank__

City: __Raleigh__   State: __NC__   Zip: __27611__

Routing Number: __061191848__

Account Number: __009062698628__

Account Name: __A.S.M. Holdings 64 LLC__

Signature(s):

By: __Ali Muhammad__

Name/Title: __Ali Muhammad/Owner__

Dated: __September 29, 2016__

Initials _ASM_

INITIAL HERE

York, County of Kings and/or Supreme Court of the State of New York, County of Nassau, in the sum of $26,820 less any payments timely made pursuant to the PSFRA dated September 29, 2016, plus simple interest thereon at the annual rate of nine (9%) per annum from the date of default, plus Plaintiff's reasonable attorney's fees in the liquidated amount equal to 33.33% of the amount confessed for judgment hereunder.

- This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant's accounts-receivable, which were purchased by Plaintiff pursuant to the PSFRA dated September 29, 2016, and for Defendants' breach of PSFRA, plus agreed-upon interest, attorneys' fees, costs and disbursements, as agreed-upon by Merchant and myself, under the PSFRA, dated September 29, 2016.

- Furthermore, I understand that LCF materially relies upon Merchant's covenants, representations and warranties set forth in the PSFRA, and my guaranty of performance thereon, to enter into the PSFRA with Merchant. I further understand that a breach of any such covenants, representations or warranties set forth in the PSFRA shall constitute a fraudulent misrepresentation of my and Merchant's intention to perform our duties under the PSFRA. I am further advised by LCF, and agree, that pursuant to 11 U.S.C. § 523(a)(2)(A), the debt resulting from the judgment entered pursuant to this affidavit shall not be dischargeable in any bankruptcy proceeding

- Merchant and I hereby agree that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, which reserves all of its rights and remedies against Defendants.

- If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant and I hereby consent to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

- I acknowledge that prior to executing this affidavit, I have been advised to seek independent legal advice from an attorney concerning this affidavit, and have had the opportunity to do so

- I have been authorized by Merchant to sign this Affidavit of Confession of Judgment on this

2

29th day of September 2016.

By: _____
**Ali Muhammad,** individually, and on
behalf of **A.S.M. Holdings 64 LLC**

STATE OF ___GA___          )
                           )
COUNTY OF ___DOUGLAS___    )

    On the _29_ day of _SEP_____, 201_6_ before me, the undersigned, personally
appeared **Ali Muhammad** personally known to me or proved to me on the basis of satisfactory evidence to
be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she
executed the same in his capacity and that by his/her signature on the instrument, the individual, or the
person on behalf of whom the individual acted, executed the instrument.

_____                              **NOTARY PUBLIC**

(SEAL and STAMP)

G D NDEMERA
Notary Public
Douglas County
State of Georgia
My Commission Expires Aug 27, 2017

3

Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the Company electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to Company; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diminution of any of Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (1) the express prior written consent of Company, and (2) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to Company, or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to Company at law, in equity or otherwise pursuant to this Agreement. Protection 1 The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately Protection 2, Company may enforce the provisions of the Personal Guarantee of Performance against the Guarantor. Protection 3 Merchant shall, upon execution of this Agreement, deliver to Company an executed confession of judgment in favor of Company in the amount of the Purchase Amount stated in the Agreement. Upon breach of any provision in this paragraph 1.11, Company may enter that confession of judgment as a judgment with any petition brought or pending against Merchant Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under in involuntary filing Protections 2 and 3 are immediately invoked.

2.10 Working Capital Funding. Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than Company.

2.11 Unencumbered Receipts. Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of Company

2.12 Business Purpose. Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchants entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.13 Default Under Other Contracts. Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity

III. EVENTS OF DEFAULT AND REMEDIES 3.1 Events of Default. The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) Merchant shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Merchant seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) the sending of notice of termination by Guarantor; (e) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (f) Merchant shall transfer or sell all or substantially all of its assets; (h) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (i) Merchant shall use multiple depository accounts without the prior written consent of Company; (j) Merchant shall change its depositing account without the prior written consent of Company; (k) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; or (l) Merchant shall default under any of the terms, covenants and conditions of any other agreement with Company.

3.2 Remedies. In case any Event of Default occurs and is not waived pursuant to Section 4.4.1 hereof, Company may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy. All rights, powers and remedies of Company in connection with this Agreement may be exercised at any time by Company after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity

3.3 Costs. Merchant shall pay to Company all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of Company's remedies set forth in Section 4.2 above, including but not limited to court costs and attorneys' fees.

3.4 Required Notifications. Merchant is required to give Company written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give Company seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

IV. MISCELLANEOUS 4.1 Modifications; Agreements. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by Company

4.2 Assignment. Company may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

4.3 Notices. All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

4.4 Waiver Remedies. No failure on the part of Company to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5 Binding Effect; Governing Law, Venue and Jurisdiction. This Agreement shall be binding upon and inure to the benefit of Merchant, Company and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Company which consent may be withheld in Company's sole discretion Company reserves the rights to assign this Agreement with or without prior written notice to Merchant. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Company so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by Company to transfer such proceeding to an Acceptable Forum

4.6 Survival of Representation, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.7 Severability. In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.8 Entire Agreement. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement hereto embody the entire agreement between Merchant and Company and supersede all prior agreements and understandings relating to the subject matter hereof.

4.9 JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.10 CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.11 Facsimile Acceptance. Facsimile signatures shall be deemed acceptable for all purposes

Initials 

**Empower Group** - 37-18 Northern Blvd Suite 409, Long Island City, NY 11101

Fee Structure Form - ID Number: 2519105a

"I hereby authorize Empower Group Inc, to initiate a debit entry to my Checking account at the depository financial institution named below in the amounts listed below, hereafter called Depository, and to debit the same to such account. I acknowledge that the origination of ACH transactions to my account must comply with the provisions of the U.S. law."

Business Assessment Fee:    $89

File Processing Fee:    $109

Broker Origination Fee:    $119

Bank Name: FIRST CITIZENS

City:    AT.    State:  GA.    Zip:    30310

Routing Number:   061191848    Account Number: 009062698628

Company:  ASM HOLDINGS 64,LLC

Address:   1851 PENELOPE RD.N.W.

Phone: 404-664-1023

Print Name(s):  ALI MUHAMMAD    Title: OWNER

Signature: _Ali Muhammad_    Date: 9/29/16



YOUR BUSINESS NAME
YOUR BUSINESS ADDRESS
CITY, ST ZIP

0000

This Software Licensed To    Date    Check No.    Amount
**Empower Group**    6/16/15    0000    $*****0.00

Pay To The
Order Of    **EMPOWER GROUP PARTNERS**

**Pay Exactly** three hundred seventeen***********

YOUR BANKS INFO    Payable in U.S. Funds

**SIGNATURE NOT REQUIRED**
Your depositor has authorized this payment to payee.
Payee to hold you harmless for payment of this document.
This document shall be deposited only to credit of payee.
Absence of endorsement is guaranteed by payee.

Memo  EMPOWER GROUP ADMIN FEE
Customer authorization obtained   6/16/15
Using: Quick Pay Office Pro 7 06

⑈0000⑈ ⑆000000000⑆ 000000000000⑈

THIS IS HOW THE DRAFT WILL APPEAR ON YOUR BANK STATEMENTS

** IF ACH IS RETURNED OR NOT HONORED IN ANYWAY BY YOUR BANK THERE WILL BE A $35.00 FOR EVERY RETURNED ACH.



## Last Chance Funding Inc. - SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: **A.S.M. Holdings 64, LLC** D/B/A: **A.S.M. Holdings 64, LLC**

Physical Address: **1851 Penelope Rd Nw** City **Atlanta** State **GA** Zip **30314**

Federal TAX ID# **27-4625767**

### SECURITY AGREEMENT

**Security Interest.** To secure Merchant's payment and performance obligations to Last Chance Funding Inc. (herein after referred to as COMPANY) under the Merchant Agreement (the "Factoring Agreement"), Merchant hereby grants to COMPANY a security interest in (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant; and (b) all proceeds, as that term is defined in Article 9 of the UCC (a and b collectively, the "Collateral").

**Cross-Collateral.** To secure Guarantor's payment and performance obligations to COMPANY under this Security Agreement and Guaranty (the "Agreement"), Guarantor hereby grants COMPANY a security interest in

_____

(the "Additional Collateral"). Guarantor understands that COMPANY will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Merchant and Guarantor each acknowledge and agree that any security interest granted to COMPANY under any other agreement between Merchant or Guarantor and COMPANY (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement.

Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as COMPANY deems necessary to perfect or maintain COMPANY'S first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes COMPANY to file any financing statements deemed necessary by COMPANY to perfect or maintain COMPANY's security interest, which financing statement may contain notification that Merchant and Guarantor have granted a negative pledge to COMPANY with respect to the Collateral, the Additional Collateral and the Cross-Collateral, and that any subsequent lien or may be tortuously interfering with COMPANY's rights. Merchant and Guarantor shall be liable for and COMPANY may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by COMPANY in protecting, preserving and enforcing COMPANY's security interest and rights.

**Negative Pledge.** Merchant and Guarantor each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** COMPANY shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, COMPANY may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that COMPANY may enter into an agreement with Merchant's landlord giving COMPANY the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified Merchant capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, COMPANY may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise.

### GUARANTEE

**Personal Guaranty of Performance.** The undersigned Guarantor(s) hereby guarantees to COMPANY, Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement, and (ii) at the time Merchant admits its inability to pay its debts, or makes a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against Merchant seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts.

**Guarantor Waivers.** In the event that Merchant fails to make a payment or perform any obligation when due under the Merchant Agreement, COMPANY may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross- Collateral COMPANY may hold pursuant to this Agreement or any other guaranty.

COMPANY does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) COMPANY's acceptance of this Agreement , and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to COMPANY. In addition, COMPANY may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to COMPANY; (ii) release Merchant from its obligations to COMPANY; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to COMPANY under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i)

Initials [signature]

[INITIAL HERE]

subrogation ; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that COMPANY must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

**MERCHANT #1**

By Ali Muhammad /Owner

(Print Name and Title)         (Signature)

SS# 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 _____ Drivers License Number  055003054

**MERCHANT #2**

By _____         _____

(Print Name and Title)         (Signature)

SS#_____ Drivers License Number _____

**OWNER/GUARANTOR #1**

By Ali Muhammad /Owner

(Print Name and Title)         (Signature)

**OWNER/GUARANTOR #2**

By _____         _____

(Print Name and Title)         (Signature)

Initials



Merchant will be bound by all of the terms of this authorization. Merchant further agrees that a breach of this authorization will constitute a "Breach" of the agreement.

Merchant will be bound by all of the terms of this authorization. Merchant further agrees that a breach of this authorization will constitute a "Breach" of the agreement.

Routing Number __061191848__

Account Number __009062698628__

Account Name __A.S.M. Holdings 64 LLC__

Bank Name __First Citizens Bank__

Type of Account: __X__Checking ____Savings

Merchants Legal Name: __A.S.M. Holdings 64 LLC__

Merchants Identification Number of Merchant Credit Card Processor:

_____

Signature: X _Ali D Muhammad_ ████████

Printed Name: __Ali Muhammad/Owner__

View-Only Access to Online Bank

Login: __www first citizens.com__

Password: __Private 26__

Date: __September 29, 2016__

Initials __ASM__

INITIAL HERE

# C. SAMUEL RAEL
### *Attorney at Law*
### *2221 Peachtree Road, N.E.*
### *Suite D-114*
### *Atlanta, GA 30309*
### samuelrael@gmail.com

October 18, 2016

**VIA:  Certified Mail & E-Mail**

Mitchell Levy, Director of Legal
Affairs enforcement
The LCF Group
411 Hempstead Turnpike
West Hempstead NY 11552

Re:     ASM Holdings 64 LLC

Sub:    Your emails/voice mails dated October 17, & October 18, 2016

Dear Mr. Levy:

I represent and I am retained by Ali Muhammad of ASM Holdings 64 LLC.

Please be advised that this communication is written Pursuant The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. Section 1692-1692p; Fair Credit Reporting Act (FCRA) 15 U.S.C. Section 1681 Truth in Lending Act (TILA), 15 U.S.C. Section 1601.

The Georgia Fair Business Practices Act, OCGA section 10-1-399(b) this section deals with unfair and deceptive acts and practices in the daily collections on my clients account.

Please respond to the following requests in writing:
1. Beginning June 16, 2016, please provide this firm with a daily accounting of withdrawals and ending balances from the June disbursement. If the specified percentage rate is 15%, please explain the purchase price of $15,000.00 on said contract, and the receipts purchased amount of $22,500.00.

2. The August 18, 2016, disbursement of 17,605.00, please provide this firm with a daily accounting of withdrawals and ending balances from the June disbursement. If the

EXHIBIT"D"

specified percentage rate is 15%, please explain the purchased price of $31,820.00 on said contract and the receipts purchased amount

3.  The September 29, 2016, disbursement of please provide this firm with a daily accounting of withdrawals and ending balances from the August disbursement. If the specified percentage rate is 15%, please explain the purchased price of $26,820.00 on said contract and the receipts purchased amount of September daily withdrawals from the date of the last withdrawal.

PLEASE BE GOVERNED ACCORDINLY

Very Truly Yours,

C. Samuel Rael

cc: Ali Muhammad
   Federal Trade Commission
   Consumer Finical Protection Bureau

**C. SAMUEL RAEL**
ATTORNEY AT LAW
2221 PEACHTREE ROAD
SUITE D-114
ATLANTA, GEORGIA 30309
samuelrael@gmail.com

November 21, 2016                              **CERTIFIED MAIL--RETURN**
                                               **RECEIPT REQUESTED**

Mitchell Levy, Director of Legal Affairs enforcement
The LCF Group
411 Hempstead Turnpike
West Hempstead NY 11552

      Re: A.S.M. Holdings 64 LLC and Ali S. Muhammad; Opposition to
         Affidavit and Confession of Judgment and Motion to Strike

Dear Mr. Levy,

     As you may know, I represent A.S.M. Holdings 64 LLC and Mr. Ali S. Muhammad in regard to the above matter.

     Enclosed please find one document titled Opposition to Affidavit and Confession of Judgment and Motion to Strike Confession of Judgment. The documents are self-explanatory and speak for themselves.

     Unless the Affidavit of Confession of Judgment are immediately withdrawn, we shall commence litigation in a court of competent jurisdiction against your company. We anticipate doing substantial discovery to discover as much as possible concerning your operation and to bring those facts before the various governmental regulatory agencies, such as the CFPB and others.

     The only way to avoid litigation at this point is for you to immediately withdraw the affidavits of confession of judgment as set forth above. As time is of the essence, please respond within five (5) business days from the date of receipt of this letter.

EXHIBIT"E"

1

If I do not hear from you within the five (5) day period set forth above, I shall immediately go forward without further notice to you or to your company.

PLEASE BE GOVERNED ACCORDINGLY.

Very truly yours,

C. Samuel Rael
Attorney for A.S.M. Holdings 64 LLC and Ali S. Muhammad

cc: Ali S. Muhammad
Federal Trade Commission
Consumer Financial Protection Bureau

# C. SAMUEL RAEL
## ATTORNEY AT LAW
2221 PEACHTREE ROAD
SUITE D-114
ATLANTA, GEORGIA 30309
samuelrael@gmail.com

December 6, 2016                    **CERTIFIED MAIL--RETURN**
                                   **RECEIPT REQUESTED**

Joseph I. Sussman, Esq.
Joseph I. Sussman, P.C.
Attorney for Last Chance Funding, Inc.
333 Pearsall Ave., Suite 205
Cedarhurst, NY 11516

    Re: A.S.M. Holdings 64 LLC and Ali S. Muhammad v. Last Chance
Funding, Inc. and Joseph I . Sussman, P.C.

Dear Attorney Sussman,

    Please be advised that I represent the above clients in regard to this matter.

    This letter shall confirm a letter that you sent directly to my client dated
November 29, 2016. Certainly you know, or should know, that I represent both
A.S.M. Holdings 64 LLC and Ali S. Muhammad. I sent two separate letters to
Mitchell Levy, one dated October 18, 2016 and another dated November 21, 2016.
Since Mr. Levy purports to be acting on behalf of Last Chance Funding, Inc.
and/or LCF Group, as their counsel, you are certainly aware of these prior
communications between this office and your client and that I have been
representing A.S.M. Holdings 64 LLC and Ali S. Muhammad for some time
regarding this matter.

    Therefore I consider your letter, sent directly to my client, to be an obvious
effort to circumvent this office and my representation of my clients, as a serious
breach of the ethical considerations and the canons of ethics which govern all
attorneys. As a result I am giving serious consideration to lodging a formal
complaint with the New York Bar for your violations of the ethical rules.

EXHIBIT"F"

1

I am also reviewing the paperwork that your client, Last Chance Funding Inc. had my client sign, including the Confession of Judgment and other papers to evaluate whether you client is in strict compliance with both State and Federal law. As part of our research in this matter, I will also be evaluating whether class action relief might be available to my clients and other plaintiffs similarly situated. Please be so advised.

Incidentally, I went to the website for the Secretary of State of the State of New York. Your client, Last Chance Funding, Inc. purports to be a New York Corporation, as the paperwork states. After doing a search, there was no listing of Last Chance Funding, Inc. as a New York Corporation according to the Secretary of State of the State of New York. If it is determined that your client is not properly incorporated as purported within the agreements that my client signed, this would invalidate the Confession of Judgment and other paperwork and could result in  substantial liability for your client in this matter.

Please respond to me at this office only. Any further direct communication between your office and my client is unethical and strictly prohibited and I will not hesitate to go forward with a complaint.


PLEASE BE GOVERNED ACCORDINGLY.

Encl:1

Very truly yours,

C. Samuel Rael
Attorney for A.S.M. Holdings 64 LLC and Ali S. Muhammad

cc: Ali S. Muhammad
     Federal Trade Commission
     Consumer Financial Protection Bureau
     Controller of the Currency
     Mitchell Levy, Esq. LCF

**JOSEPH I. SUSSMAN, P.C.**

ATTORNEYS AT LAW

333 PEARSALL AVE, SUITE 205

CEDARHURST, NEW YORK 11516

JOSEPH SUSSMAN
ELIYAHU R. BABAD

TELEPHONE: (212) 457-8590
FAX: (212) 947-4967
CONTACT@SUSSMANLAW.NET

ADMITTED IN NEW YORK AND
NEW JERSEY

January 4, 2017

Ali Muhammad
A.S.M. Holdings 64, LLC
1851 Penelope Rd NW
Atlanta, GA 30314

Re:   Last Chance Funding Inc. v. A.S.M. Holdings 64, LLC and Ali Muhammad
      Index No. 610013/16
      Our File No. 2016-0542
      **Judgment Amount Plus Statutory Interest To Date: $26,139.42**

Dear Ali Muhammad:

On December 21, 2016, Last Chance Funding Inc. received judgment against you in the amount of $26,049.50. Copies of the judgment with Notice of Entry and an important Notice to Judgment Debtor are enclosed herewith.

Take notice that unless you have previously entered into a payment schedule with our office, you may be held liable for additional costs of enforcement of this judgment, such as local docketing, property liens, and wage and bank executions. The judgment will be valid for twenty (20) years from its date of entry. During that period, interest will accrue on the judgment amount at the rate of nine percent (9%) per year.

All payments should be remitted to our office at the above-referenced address, with the check made payable to "Joseph I. Sussman, P.C." If you would like to discuss a payment plan, please immediately contact Jay Sussman at 212-457-8590 Ext 310.

Very truly yours,

JOSEPH I. SUSSMAN, P.C.

By: Joseph Sussman

cc: Client

**EXHIBIT "G"**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

----------------------------------------------------------X

**LAST CHANCE FUNDING INC.,**

Plaintiff,

-against-

**A.S.M. HOLDINGS 64, LLC and ALI**
**MUHAMMAD,**

Defendant(s).

----------------------------------------------------------X

**Index No.  610013/16**

**NOTICE OF ENTRY**

PLEASE TAKE NOTICE, that the within is a true and correct copy of a judgment entered on

by the Clerk of the Supreme Court of the State of New York, County of Nassau.

Dated: January 4, 2017

JOSEPH I. SUSSMAN, P.C.



By:  JOSEPH SUSSMAN
333 Pearsall Ave, Suite 205
Cedarhurst, NY 11516
212-457-8590

*Attorneys for plaintiff*

TO  DEFENDANT(S):

A.S.M. HOLDINGS 64, LLC
1851 Penelope Rd NW
Atlanta, GA 30314

ALI MUHAMMAD
1851 Penelope Rd NW
Atlanta , GA 30314

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-------------------------------------------------------------X

LAST CHANCE FUNDING INC.,

Plaintiff,

-against-

A.S.M. HOLDINGS 64, LLC and ALI
MUHAMMAD,

Defendant(s).

-------------------------------------------------------------X

Index No. 2016610013

JUDGMENT

WHEREAS, the parties having entered into a Merchant Agreement and Security Agreement ("MA"), whereby plaintiff purchased from defendant A.S.M. HOLDINGS 64, LLC ("defendant-seller") $26,820.00 of defendant-seller's future receivables as they are generated in the course of defendant-seller's business, and whereas defendant-seller defaulted under the MA by November 29, 2016, and whereas defendants executed an Affidavit of Confession of Judgment authorizing plaintiff to enter judgment against defendants in the Supreme Court of the State of New York, County of Nassau, in the amount of $26,820.00, less payments made under the MA, plus attorney's fees in the liquidated amount equal to 33.33% of the amount confessed thereunder together with the costs and disbursements of the action, in the event that defendant-seller is in default of the MA,

NOW, upon the Affidavit of Andy Parker, in support of plaintiff's application for the entry of judgment by confession, and upon the MA, and upon the Affidavit of Confession of Judgment signed by defendants, and upon application of Joseph I. Sussman, P.C., attorneys for plaintiff, located at 333 Pearsall Avenue, Suite 205,. Cedarhurst, NY 11516, it is,

ADJUDGED that plaintiff, Last Chance Funding Inc. residing at 411 Hempstead Tpk, West Hempstead, NY 11552, has judgment and recovers from defendant A.S.M. HOLDINGS 64, LLC residing at 1851 Penelope Rd NW, Atlanta, GA 30314 and defendant ALI MUHAMMAD residing at 1851 Penelope Rd NW, Atlanta , GA 30314 the sum of $19,368.38, plus attorney's fees in the amount of $6,456.12 together with $225.00 costs and disbursements as taxed by the Clerk, amounting in all to the sum of $26,049.50 and that plaintiff have execution therefore.

Judgment signed this 21st day of Dec , 2016

Maureen O'Conne
CLERK

File No. 2016-0542

## NOTICE TO JUDGMENT DEBTOR OR OBLIGOR

Money or property belonging to you may have been taken or held in order to satisfy a judgment or order which has been entered against you. Read this carefully.

### YOU MAY BE ABLE TO GET YOUR MONEY BACK

State and federal laws prevent certain money or property from being taken to satisfy judgments or orders. Such money or property is said to be "exempt". The following is a partial list of money which may be exempt:

1. Supplemental security income, (SSI);
2. Social security;
3. Public assistance (welfare);
4. Spousal support, maintenance (alimony) or child support;
5. Unemployment benefits;
6. Disability benefits;
7. Workers' compensation benefits;
8. Public or private pensions; and
9. Veterans benefits.
10. Ninety percent of your wages or salary earned in the last sixty days;
11. Twenty-five hundred dollars of any bank account containing statutorily exempt payments that were deposited electronically or by direct deposit within the last forty-five days, including, but not limited to, your social security, supplemental security income, veterans benefits, public assistance, workers' compensation, unemployment insurance, public or private pensions, railroad retirement benefits, black lung benefits, or child support payments;
12. Railroad retirement; and
13. Black lung benefits.

If you think that any of your money that has been taken or held is exempt, you must act promptly because the money may be applied to the judgment or order. If you claim that any of your money that has been taken or held is exempt, you may contact the person sending this notice.

Also, YOU MAY CONSULT AN ATTORNEY, INCLUDING ANY FREE LEGAL SERVICES ORGANIZATION IF YOU QUALIFY. You can also go to court without an attorney to get your money back. Bring this notice with you when you go. You are allowed to try to prove to a judge that your money is exempt from collection under New York civil practice law and rules, sections fifty-two hundred twenty-two-a, fifty-two hundred thirty-nine and fifty-two hundred forty. If you do not have a lawyer, the clerk of the court may give you forms to help you prove your account contains exempt money that the creditor cannot collect. The law (New York civil practice law and rules, article four and sections fifty-two hundred thirty-nine and fifty-two hundred forty) provides a procedure for determination of a claim to an exemption.